**SPENCER COMPANIES, INC.,**
**Plaintiff-Appellant,**

**v.**

**ARMONK INDUSTRIES, INC., et al.,**
**Defendants-Appellees.**

**No. 73-1283.**

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1973.

Decided Dec. 20, 1973.

LEVIN H. CAMPBELL, Circuit Judge.

On August 3, 1973, Spencer filed with the district court its complaint against Armonk Industries, Inc., eight other corporate defendants, and four individual defendants alleging common law fraud and federal securities law violations. Spencer alleged that it sold all of the stock of its wholly-owned subsidiary, R. P. Hazzard Co., to Armonk for cash and Armonk's note payable quarterly over four years and guaranteed by another defendant, New Jersey Industries, Inc. Spencer alleged that the so-called Michael Organization, dominated by the individual defendant, Michael, and his family, and composed of defendants and others, misrepresented Armonk as solvent and capable of paying the note when, in fact, it had commenced a one-year tax liquidation some seven months previously. Spencer seeks to impose a joint and several liability upon all the defendants totalling not only the remaining balance on the note but all the "profits" earned by Armonk and related companies because of their purchase of Hazzard.

On August 7, Spencer moved for a temporary order restraining the defendants from rendering Armonk unable to meet Spencer's asserted claims by further distributing Armonk's assets. Spencer gave notice on August 13 to the attorney for Armonk and New Jersey that the motion would be heard on August 15 (before the "emergency" judge, as the judge to whom the case had been assigned was away). The hearing was attended by counsel for Armonk and New Jersey. Spencer said at the hearing that it had not learned of Armonk's liquidation until a month previously at a deposition in a law suit which Armonk and others had commenced against Spencer. Counsel for Armonk rejoined that (1) Armonk had been a mere nominee, because the parties had relied on New Jersey's financial ability, not Armonk's; (2) New Jersey had a net worth of over $23,000,000; and (3) Michael and the other defendant constituents of the Mi-

David J. Brody, Boston, Mass., with whom Lewis H. Weinstein and Foley, Hoag & Eliot, Boston, Mass., were on brief, for appellant.

Nathan T. Wolk, Boston, Mass., with whom Frank D. Aronson and Nathanson & Rudofsky, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

chael Organization afforded ample security for the claim.

The court, without findings, denied temporary relief as a "matter of discretion". Spencer thereafter moved for a preliminary injunction but, upon learning that the emergency judge would not hear the motion and that the regularly assigned judge would not be available until the next month at the earliest, filed this appeal.

If we have jurisdiction of this appeal, it is because the emergency judge's denial of the motion for a temporary restraining order was tantamount to denial of a preliminary injunction. "In a civil action, an order granting, denying or dissolving a restraining order *qua* restraining order is non-appealable." 7 Moore's Federal Practice ¶ 65.07. Austin v. Altman, 332 F.2d 273 (2d Cir. 1964). Sometimes, however, although the distinction may be "subtle and difficult to draw," Austin v. Altman, *supra*, 275, an order denying a temporary restraining order after full presentation by the parties has the effect of the refusal of "an injunction" within the meaning of 28 U.S.C. § 1292(a)(1).[1] Such a situation may exist if the refusal of even temporary relief cuts off the possibility of meaningful interlocutory relief, *e. g.* refusal to restrain a student's immediate expulsion from school, Woods v. Wright, 334 F.2d 369 (5th Cir. 1964); refusal to bar a prosecution, United States v. Wood, 295 F.2d 772 (5th Cir. 1961); or vacating an order that had been the sole assurance against mooting the case, Wirtz v. Powell Knitting Mills, 360 F.2d 730 (2d Cir. 1966).

■ The present order would normally not be in that category. But Spencer, in spite of its diligence, could not obtain a prompt hearing or ruling on its subsequent motion for preliminary injunction; by the time the motion could be considered, the security which it sought might well have vanished. Under the circumstances, Spencer was entitled to treat the initial order, entered after a full hearing, as appealable, thus permitting it to seek an immediate injunction pending appeal (which, as it turned out, we denied). *Cf.* Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S. Ct. 1221, 93 L.Ed. 1528 (1949); New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183 (1st Cir. 1972). Had a hearing on the motion for preliminary injunction been available in normal course, or had Spencer not demonstrated diligence, the legal effect of the order would, of course, have been different.

■ Turning to the merits, we conclude that the district court did not abuse its discretion in denying injunctive relief. It could reasonably conclude that Spencer had demonstrated neither a probability of success nor a clear likelihood of irreparable harm. Spencer's claims, in excess of $4,000,000, are gounded in large part not on the outstanding balance of the note (as to which Spencer concedes that under the New Jersey guaranty it is relatively secure) but on a rather novel and complex theory of damages. Without suggesting that Spencer may not yet be able to make out a case, it is difficult to quarrel with the district court insofar as it may have thought that Spencer faced an uphill battle on the merits. To date all installments on the note have been paid when due, although Armonk has sued Spencer in the state courts seeking relief which would affect the obligation. The alleged misrepresentations, going only to the possible value of the note, might arguably support a claim the maximum value of which is the value of the note as it had been represented to be. *See* 3 L. Loss, Securities Regulation 1628–30 (2d ed. 1961). The question of damages cannot, at least superficially, be analogized to that faced in Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), where the

1. *See* ITT Lamp Division v. Minter, 435 F.2d 989 (1st Cir. 1970), cert. denied 402 U.S. 933, 91 S.Ct. 1526, 28 L.Ed. 868 (1971); Riseman v. School Committee, 439 F.2d 148 (1st Cir. 1971). *Cf.* Graham v. Minter, 437 F.2d 427 (1st Cir. 1971).

misrepresentation went to the value of the shares, and where the facts were significantly different.

Moreover, there is a major factual dispute concerning the materiality of any misrepresentations, if made. The defendants assert, and portions of the complaint and purchase agreement seem to bear them out,[2] that Spencer's arrangements were only nominally with Armonk. *Cf.* Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). Finally, there are lurking problems concerning the applicability of the securities laws. Is a purely private note a "security"? *See* Lino v. City Investing Co., 487 F.2d 689 (3d Cir. 1973) and cases cited therein. If not, is a misrepresentation relevant not to the value of the stock but only to likelihood of receiving the promised payment, within the scope of the statutes? *Compare* A. T. Brod & Co. v. Perlow, 375 F. 2d 393 (2d Cir. 1967) with Eason v. General Motors Acceptance Corp., 490 F.2d 654, 656 n. 5 (7th Cir. 1973).

While we do not prejudge any of these issues, we think the district court was within its discretion to conclude that there was uncertainty whether Spencer would ever prevail on the merits.

As for irreparable harm, we have already noted that a sizeable group of corporations and individuals, members of the Michael Organization, are named as defendants. It was not shown that all or most would be judgment-proof. The district court could have concluded that if Spencer recovered it would not be without sources from which to collect.

Finally, counsel for Armonk represented, albeit in a curiously hedged manner, that all, or virtually all, of Armonk's resources had already been distributed.

While the assurances were in form and content understandably unsatisfactory to Spencer, we cannot say that the district court was not entitled in its discretion to attach some significance to them. We would add that we shall remain mindful of appellee's assurances made to us at oral argument which we take as unequivocal representations to this court that Armonk had distributed its assets.

Affirmed.

---

2. The purchase agreement contains a series of detailed representations and warranties made by New Jersey; reference is made to New Jersey's balance sheet, which Spencer inspected. By way of contrast there are no representations about the status of Armonk, which had been "substituted" for another corporation in the Michael Organization only the night before.