Darlyne FRANKLIN and Paul Franklin, d/b/a Franklin Productions, Plaintiffs,

v.

Mario D. CIROLI, Defendant.

Civ. A. No. 94–10301–JLT.

United States District Court, D. Massachusetts.

April 1, 1994.

---

A. Colarossi, Joseph V. Cattoggio, Revere, MA, for plaintiffs.

Richard L. Vitali, City Solicitor's Office, Samuel A. Vitali, Peralta, Gilligan & Vitali, Lynn, MA, for defendant.

*MEMORANDUM*

TAURO, Chief Judge.

## I.

### Background

Plaintiffs Darlyne and Paul Franklin, d/b/a Franklin Productions (the "Franklins"), create and produce theatrical shows. In February 1992, they created a show entitled "Joey and Maria's Comedy Italian Wedding" ("Joey & Maria"). Their copyright application for "Joey & Maria" was filed on November 26, 1993, and has since been granted.

The Franklins claim that in September 1993, they entered into an oral contract with defendant Mario D. Ciroli, the owner and operator of the Montvale Plaza, a Stoneham function hall. The parties' contract provided that "Joey & Maria" would be performed at the Montvale Plaza from September 1993 until December 1993. According to plaintiffs, both parties later orally agreed to add six performances in January and February 1994, for a payment of $2,750.00 per show.

Beginning in November 1993, Ciroli began advertising performance dates and seeking actors for his own show—"a Comedy Italian Wedding"—to be performed at the Montvale Plaza in 1994. The Franklins now claim that Ciroli's new production copied their production and infringes their copyright.

In addition to their claim for copyright infringement (Count I), plaintiffs have asserted several state law claims, including claims for fraud (Count II), breach of contract (Count III), unfair competition (Count IV), violations of Mass.Gen.L. ch. 93A (Count V), and interference with advantageous business relations (Count VI).

Presently before the court is the Franklins' motion for a preliminary injunction.[1]

## II.

### Copyright Infringement Claim

When considering a motion for injunctive relief, the court considers whether:

(1) the plaintiff has demonstrated a substantial likelihood of success on the merits; (2) the plaintiff will suffer irreparable harm if the relief is not granted; (3) the injury outweighs the harm, if any, that granting the injunction will cause the nonmovant; and (4) granting the injunction is consistent with public interest. *Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). The court first considers the Franklins' likelihood of success on the merits of their infringement claim, the *"sine qua non"* of the four-part test. *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993).

### A. Likelihood on the Merits

To prevail on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) copying of the protected work by the alleged infringer. *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 605 (1st Cir. 1988). Consequently, copyright registration is a "condition precedent" to filing an infringement claim. *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 650 F.Supp. 838, 850 (D.Mass.1986).

### i. Validity of the Registration

In this case, the Franklins have submitted a copy of their copyright registration, which is *prima facie* evidence of a valid copyright. 17 U.S.C. § 410(c). This presumption of validity may be rebutted, however. *See Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 763 (2d Cir.1991).

Ciroli contests the validity of the Franklins' copyright registration for "Joey & Maria", arguing that their application was incomplete and incorrect because (1) it failed to include the date and nation of its first publication; and (2) it failed to identify preexisting works that "Joey & Maria" incorporates, in violation of the copyright statute. *See* 17 U.S.C. § 409(9).

---

**1.** The Franklins specifically seek to enjoin Ciroli from (1) producing the allegedly infringing show in Massachusetts or New Hampshire; (2) promoting his show using advertisements that copy the design of their advertisements; (3) claiming that he is responsible for plaintiffs' production; and (4) infringing their copyright. The Franklins also seek damages, attorney's fees, and costs.

Upon review of both the registered work and the copyright statute, the court initially observes that the Franklins' work appears to constitute a "derivative work."[2] As a result, the Franklins' registration application should have listed the names of preexisting works and a brief statement of the additional material covered in the copyright claim being registered. *See* 17 U.S.C. § 409(9).

But several courts have held that errors on a registration application do not affect the plaintiff's right to sue for infringement, unless the errors or failures (1) are knowing; (2) harmed or prejudiced the defendant in some way *or* affected the validity of the copyright; and (3) may have caused the Copyright Office to reject the application. *See Eckes v. Card Prices Update,* 736 F.2d 859, 861 (2d Cir.1984); *Yamate USA Corporation v. Sugerman,* 1991 WL 274854 at *7, 1991 U.S. Dist. LEXIS 20701 at *20 (D.N.J. 1991); *Dynamic Solutions,* 646 F.Supp. at 1341; *Iris Arc v. S.S. Sarna, Inc.,* 621 F.Supp. 916, 920 (E.D.N.Y.1985); and *Videotronics v. Bend Electronics,* 586 F.Supp. 478, 485 (D.Nev.1984).

After reviewing the scripts, this court observes that preexisting works account for a relatively insignificant part of the performance. Consequently, it is highly unlikely that omission of those works prejudiced Ciroli or would have caused the copyright office to reject the Franklins' application. Notably,

Ciroli has not asserted that the Franklins' errors were knowing and intentional, prejudicial to him, or likely to have caused the Copyright Office to reject their application. The court, therefore, finds that these omissions do not invalidate the Franklins' copyright registration.

Similarly, with respect to the Franklins' failure to list the dates of publication, the court again finds that this failure does not invalidate their registration. Based upon the evidence submitted with the parties' memoranda, and the arguments made at the hearing on the motion, there is no reason to believe that the omissions were knowing, that they affected the validity of the copyright, or that they somehow prejudiced Ciroli. *See PRC Realty Systems v. National Ass'n of Realtors,* 766 F.Supp. 453, 461 (E.D.Va.1991), *rev'd in part on other grounds,* 972 F.2d 341, (errors in titles and dates of completion do not affect the validity of a copyright).[3]

The court, therefore, concludes that plaintiffs have established ownership of a valid copyright. As a result, the Franklins' likelihood of success depends upon their ability to prove that Ciroli has copied their copyrighted production.

*ii. Copying of the Protected Work*

■ Copying of a protected work by an alleged infringer is generally established by showing that (1) the defendant had access to

---

**2.** A derivative work is defined as:

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'

17 U.S.C. § 101.

The script attached to the Franklins' registration application clearly incorporates several preexisting works, namely, traditional wedding music and popular songs. Of course, the Franklins were entitled to copyright protection only for the material that they contributed, which must have included 'some substantial, not trivial originality.' *Dynamic Solutions, Inc. v. Planning & Control, Inc.,* 646 F.Supp. 1329, 1340 (S.D.N.Y. 1986). *See also Computer Assocs. Int'l, Inc. v.*

*Altai, Inc.,* 775 F.Supp. 544, 556 (E.D.N.Y.1991), *aff'd,* 982 F.2d 693 (2d Cir.1992) ("Of course, § 103(b) limits the extent of a copyright in a derivative work to the 'material contributed by the author of such work.... It further provides that the copyright in a derivative work neither enlarges nor diminishes the 'scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.' ")

**3.** Ciroli also argues that Italian wedding comedy scripts, such as "Joey & Maria", are inherently uncopyrightable. Def's. Mem. Opp'n. Mot. Prelim. Inj. at 10–11 (*citing Midas Productions, Inc.,* 437 F.Supp. 1388, 1390 (C.D.Cal.1977).

But the court in *Midas Productions* did not find that the movies were uncopyrightable, only that the plaintiff had not established substantial similarity and could not prevail on an infringement claim. *Midas Productions, Inc.,* 437 F.Supp. at 1390. Certainly, copyright protection is available for the original expression of an idea. *See Concrete Machinery,* 843 F.2d at 606.

the copyrighted work; *and* (2) there is a "substantial similarity" between the protected work and the alleged infringing work. *Concrete Machinery*, 843 F.2d at 606.

Ciroli does not appear to dispute that he had access to the Franklins' work during the several months that "Joey & Maria" was performed at his hall. Rather, Ciroli argues that the Franklins have failed to demonstrate that there is a "substantial similarity" between their protected script and his allegedly infringing script. Citing *Midas Productions, Inc. v. Baer*, 437 F.Supp. 1388, 1390 (C.D.Cal.1977), Ciroli specifically argues that he did not copy any protected elements of plaintiffs' show because there is no protected interest in stereotyped characters.[4]

The First Circuit has labeled "substantial similarity" an "elusive concept," adding that it refers "only to the expression of the artist's concept, not the underlying idea itself; mere identity of ideas expressed by two works is not *substantial* similarity giving rise to an infringement action." *Concrete Machinery*, 843 F.2d at 606 (emphasis in original). The First Circuit added that "an artist can claim to 'own' only an *original manner* of expressing ideas," not the ideas themselves. *Id.* (emphasis added). As a result, this court is concerned only with a comparison of the original expression contained in "Joey & Maria" and Ciroli's script, not with any stereotyped themes, plots, or characters.

To determine whether there is a "substantial similarity" between the original elements in two works, a court initially "dissect[s]" the works to assess whether there are sufficient articulable similarities to justify a finding that the alleged infringer has copied from the protected work. *Id.* at 608. Once copying has been established, the court may then determine whether the copying was sufficient to constitute "unlawful appropriation" by using the "ordinary observer test". *Id.*

Upon review of the original expression in the two productions, the court agrees that the Franklins have not established "sufficient articulable similarities" to justify a finding that Ciroli copied their protected work. The "idea" of deriding Italian weddings is capable of various modes of expression. The Franklins' and Ciroli's versions differ in several ways.[5] In fact, the court concludes that the only similarities between the two scripts are (1) that both scripts rely on crude ethnic caricatures as cast members; and (2) both scripts are singularly unfunny.

As a result, the court finds that the Franklins are not likely to establish a "substantial similarity" between the original elements of their show and Ciroli's production.[6] Given that the likelihood of success on the merits is the critical factor when considering a motion for a preliminary injunction,[7] it is not necessary to treat the remaining elements of the test in extensive detail.[8]

## B. Irreparable Harm

In general, once a plaintiff has established infringement of a valid copyright, irreparable

---

4. In *Midas Productions, Inc.*, the court compared two movies in which traveling people are wrongly accused of murder. Both movies had similar plots: three young people travel South where they are warned by lawmen to "keep moving"; their vehicle breaks down and they camp out; a local murder occurs, and they are wrongly accused of murder; and some of the young people are eventually killed. *Id.* at 1389. Despite the similarities, the court found that there was no copyright infringement because individual characters, subplots, and temporal settings all differed, and copyright protection does not extend to themes, plots, and stereotyped characters. *Id.* at 1390.

5. Defendant's script contains several different "sub-themes" such as bridesmaids being inappropriately dressed, congratulatory telegrams, inappropriate songs played by mistake, and a phone call to update the groom on a football

game. In addition, it appears that defendant's show uses less improvisation, and the dialogue is much more fully scripted.

6. Ciroli has also argued that last fall he contracted with Steve Dacri, who allegedly "created" Ciroli's current show, based upon a script he wrote before the Franklins created their show, and, obviously, without viewing "Joey & Maria". But because the court finds that there is not a "substantial similarity" between the two works, it is unnecessary to consider this argument further.

7. *Weaver*, 984 F.2d at 12.

8. *See American Automobile Manufacturers Ass'n, et al. v. Greenbaum et al.*, No. 93–10799–MA, 1993 WL 443946 at *4, 1993 U.S. Dist. LEXIS 15337 at *15 (D.Mass. Oct. 27, 1993).

harm is presumed, *Concrete Machinery,* 843 F.2d at 612. In this case, however, the court is not convinced that Ciroli's show infringes the Franklins' copyright.[9] Consequently, irreparable harm will not be presumed.[10]

## C. Public Interest

The issue of public policy is rarely a "genuine issue" when a plaintiff has already demonstrated a likelihood of success on the merits. *Concrete Machinery,* 843 F.2d at 612. Here, however, plaintiffs have been unable to establish such a likelihood of success.

In addition, plaintiffs again have not introduced any evidence that the public interest lies in granting the injunction. Consequently, the court is unwilling to make such a finding.

## D. Balance of Hardships

■ Finally, the Franklins simply assert that, without injunctive relief, the balance of hardships weighs more heavily on them. This court is unconvinced.

Ciroli has already sold tickets for the upcoming shows, hired actors, and acquired rights to the script upon which his production is based. Consequently, an order barring Ciroli from producing his show anywhere within the Commonwealth or New Hampshire would cause defendant to suffer substantial harm. The court finds, therefore, that the balance of hardships favors denying the plaintiffs' motion.[11]

9. While it is true that under the test for a preliminary injunction, a plaintiff must establish each of the required elements before relief will be granted, the First Circuit has clearly noted that it is not necessary that "each element [] be considered independently of the other three factors." *Concrete Machinery,* 843 F.2d at 611 (internal citations omitted).

10. Moreover, the Franklins have not introduced any further evidence that they will continue to be subjected to harm. In fact, it appears that the Franklins have procured new bookings for "Joey & Maria".

11. *See Concrete Machinery,* 843 F.2d at 612 (noting that when a plaintiff has made only a "marginal showing" on the likelihood of success, proof that a defendant may suffer substantial harm is a significant, or even determinative, factor).

## III.

### State Law Claims

### A. Breach of Contract

■ As noted above, plaintiffs allege that they had an oral performance agreement with Ciroli through February 1994. The Franklins argue that he breached the parties' agreement by refusing to allow the plaintiffs to continue to perform "Joey & Maria" at the Montvale Plaza.

Ciroli, however, argues that the parties had entered a written agreement which provided for nine shows, the last of which was to be performed on December 31, 1993. While Ciroli claims the parties engaged in "preliminary negotiations" for further shows, he contends that they never reached an agreement. Ciroli also asserts that the Franklins breached the terms of the existing written agreement by increasing prices, failing to include the Montvale Plaza in its information hot line, and providing "inadequate" performances during November and December.

The Franklins have introduced little, if any, evidence from which the court could infer that the parties had a contract through until February 1994. In fact, the only evidence introduced by plaintiffs—a letter from Ciroli dated January 5, 1994—substantially supports Ciroli's position that it was the plaintiffs who breached the agreement between the parties.[12] Consequently, the court

12. The letter provides in relevant part:

> This is to confirm my position that the New Year's Eve show was your final show at Montvale Plaza and that any other wedding comedys [sic] will be performed by our own cast. Effective January 3, 1994.
> These are some of the reasons for the termination:
> 1. Price increases.
> 2. Have not had a full cast for the past five or six weeks.
> 3. Your refusal to include Montvale Plaza in your Hot Line even though you advertised the Hot Line at your show.
> 4. You defiantly placed your ads under my ads in Boston papers advertising your Hot Line, even though we were advertising the Joey & Maria show.
> 5. No exclusivity in North Shore or areas close to Montvale Plaza.
> Compl. Ex. D.

concludes that the Franklins have not shown a likelihood of success on the merits with respect to this claim.[13]

■ Furthermore, the court agrees with Ciroli that plaintiffs cannot establish a likelihood of irreparable harm. First, the Franklins had contracted to perform "Joey & Maria" for $2750 per show. Any losses suffered by them would, therefore, be readily ascertainable. Second, as noted above, plaintiffs have arranged for performances of "Joey & Maria" at other function halls, and, therefore, it is unclear whether the Franklins have suffered, or will suffer, any harm.[14]

*B. Fraud, Unfair Competition, Chapter 93A, and Interference with Advantageous Business Relations*

■ The Franklins also claim that Ciroli engaged in fraud and deceit when he orally represented that he would be bound by the parties' agreement to continue performances of "Joey & Maria" at the Montvale Plaza through February 1994. They suggest that Ciroli misled them into believing that he would honor the contract. Compl. ¶ 49. As a result, Ciroli hindered their ability to obtain alternate bookings for "Joey & Maria"

and kept them from competing with his show. Compl. ¶¶ 49–50.

In addition, plaintiffs have asserted claims for unfair competition, violations of ch. 93A, and interference with advantageous business relations. They claim that Ciroli tried to book his duplicate show for a group that had originally requested "Joey & Maria". In addition, plaintiffs assert that Ciroli has represented that his production is the same as the "Joey & Maria" show and engaged in unfair competition by copying plaintiffs' newspaper listings in his own advertisements.

Ciroli denies that he has misrepresented his show as the "Joey & Maria" show or engaged in fraud or unfair competition. In addition, Ciroli contends that he has never run the allegedly "infringing" design as a newspaper advertisement. According to Ciroli, the challenged design only appeared in flyers distributed during performances.[15]

■ Plaintiffs do not respond to defendants' arguments or point to any specific evidence that supports their claim. For example, the Franklins have not submitted a copy of the offending newspaper advertisements.[16] Moreover, plaintiffs have not addressed the requirements for a fraud or misrepresentation claim,[17] a ch. 93A claim,[18] or a

13. In this section, the court again employs the same four-part test used to analyze the motion for a preliminary injunction based upon the infringement claim.

14. As previously discussed, the court also questions whether the balance of interests and the public interest lie with allowing plaintiff's motion. Granting the requested relief would force Ciroli to cancel performances already scheduled, and perhaps refund tickets already purchased for upcoming shows.

15. Ciroli also argues (1) that plaintiff has no protected interest in the advertisements; and (2) that he paid for the development of the flyer design, not plaintiffs. Def.'s Mem. Opp'n. Mot. Prelim. Inj. at 15.

16. The First Circuit has noted that a major factual dispute may preclude a finding of likelihood of success on the merits upon a motion for preliminary injunction. *Spencer Companies v. Armonk Industries*, 489 F.2d 704, 707 (1st Cir.1973).

17. To sustain a claim for fraud, plaintiffs must prove that Ciroli made false and misleading representations to plaintiffs to induce them to enter

into an agreement designed to defraud them of a substantial sum of money.

18. Although plaintiffs have also asserted a claim for unfair competition, the court considers that claim to be coextensive with the ch. 93A claim, which addresses unfair methods of competition and unfair or deceptive acts in the conduct of business. *See* Mass.Gen.L. ch. 93A, § 2.

To prove an unfair competition claim under ch. 93A, the Franklins must establish that the alleged offending act was (1) within at least the penumbra of common law, statutory law or other established concepts of unfairness, (2) is immoral or otherwise unscrupulous, and (3) inflicted injury on another business. *Lane v. First Nat'l Bank of Boston*, 737 F.Supp. 118, 119 (D.Mass.1989). In assessing claims of unfairness, the Massachusetts courts have applied what is commonly known as the "rascality" test: would the conduct " 'raise the eyebrow of someone inured to the rough and tumble world of commerce.' " *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1513 (1st Cir.1989) (*quoting Levings v. Forbes & Wallace*, 8 Mass.App.Ct. 498, 503–04, 396 N.E.2d 149 (1979)).

At this time, plaintiff has failed to offer any evidence that defendant engaged in conduct that

tortious interference with business relations claim.[19]

Consequently, the court again finds that plaintiffs have not demonstrated a likelihood of success on the merits. Moreover, as noted above,[20] even if plaintiffs prevailed on this claim at trial, any harm suffered as a consequence of defendant's conduct appears to be remediable. And, finally, plaintiffs have never specified how the balance of interests tips in their favor, nor how the public interest lies in granting the requested relief.

## IV.

### Conclusion

For the foregoing reasons, the plaintiff's motion for a preliminary injunction will be denied.

"would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Id.*

**19.** To prove tortious interference with normal business relations, plaintiffs must establish (1) a business relationship of economic benefit; (2) the defendants' knowledge of the relationship; (3) the defendants' intentional and malicious interference with the relationship; and (4) that the defendants' conduct directly resulted in a loss of advantage for the Franklins. *Winter Hill Frozen Foods & Services v. Haagen–Dazs,* 691 F.Supp. 539, 548 (D.Mass.1988). Plaintiffs must also es-

tablish that the defendant's conduct was not merely incidental to another purpose. *Spencer Companies, Inc. v. Chase Manhattan Bank, N.A.,* 81 B.R. 194 (D.Mass.1987).

Here, plaintiffs have not established that defendant's distribution of flyers during performances interfered with the Franklins' relationship with potential audience members. Nor have they established a direct loss of advantage in terms of diminished ticket sales or a loss of community goodwill.

**20.** *See supra* note 13.