**AMERICAN CENTURY HOME FABRICS, INC., Plaintiff,**

v.

**ASHLEY FURNITURE INDUSTRIES, INC. and Southern Sales, Inc., Defendants.**

**Civil Action No. 06–10932–JLT.**

United States District Court, D. Massachusetts.

Jan. 10, 2007.

Michael A. Albert, Ilan N. Barzilay, Wolf, Greenfield & Sacks, Boston, MA, for Plaintiff.

Aaron W. Davis, Patterson, Casey A. Kniser, Brian Stender, Thuente, Skaar & Christensen, P.A., Minneapolis, MN, Julia Huston, Keith E. Toms, Bromberg & Sun-stein LLP, Boston, MA, John W. MacPete, Mark D. Perdue, Storm LLP Bank of America, Dallas, TX, for Defendants.

## MEMORANDUM

TAURO, District Judge.

## Background

### Introduction

Plaintiff American Century Home Fabrics, Inc., manufactures and sells fabric to retailers and furniture makers. Plaintiff owns a number of copyrighted designs. One design that Plaintiff sells is its Union design. Plaintiff alleges that in 2004, Defendant Ashley Furniture Industries, Inc. ("Ashley") purchased a sample of the Union pattern from Plaintiff and then shopped it to Zheijang Yulong Industry Co., Ltd. ("Yulong") for duplication and reproduction. Plaintiff charges that Ashley then began selling fabric with a design substantially similar to the Union design. Plaintiff further charges that its former employee, Lawrence Ward ("Ward"), left Plaintiff in September, 2003, and formed Defendant Southern Sales, Inc. ("Southern"). According to Plaintiff, Southern has sold products containing a fabric substantially similar to the Union fabric. Plaintiff brings this action against Ashley and Southern for willful copyright infringement. Before the court is Plaintiff's *Motion for a Preliminary Injunction* to enjoin Ashley and Southern from infringing its Union design.

### The Disputed Facts

According to affidavits submitted by the Plaintiff, it owns a valid copyright that has been infringed. Plaintiff bought the design then called "LOUISE 019C" from a company known as Art Cottage in the United Kingdom in 2002.[1] Plaintiff avers

---

**1.** *Decl. of Hua (Jason) Jiang in Supp. of Pl.'s Mot. for Prelim. Inj.,* Paper # 43–1 [hereinaf-

that on November 4, 2005, it registered a copyright in this design, under the name of "Louise 019C."[2] Plaintiff states that it began selling this fabric under the name "Union" in 2003 and has sold in excess of 1.4 million yards of this fabric.[3] Plaintiff avers that Defendant Ashley purchased a sample fifty yard roll of the fabric from Plaintiff in August 2004 and subsequently began marketing furniture with fabric identical to the Union design.[4] Plaintiff avers that Ward worked for the Plaintiff, had access to the Union fabric, and has since founded Defendant Southern which sells identical fabric.[5]

Defendant Ashley responds with its own affidavits which contest Plaintiff's claim of ownership in the pattern. First, Yulong's CEO, Gao Langgen ("Gao"), has filed an affidavit asserting that in May 2004, Yulong independently created the allegedly infringing fabric, known as SHDT6357.[6] Yulong submits exhibits demonstrating the progression of its design of the SHDT6357 fabric from similar designs developed in 2002 and 2003.[7]

Second, Ashley's Vice President of Design and Merchandising, Lisa Adair ("Adair"), states that Ashley only purchased the sample roll to compare it with a similar, pre-existing pattern made by Yulong.[8] Adair avers that purchasing a full sample roll is standard practice in the industry.[9] She contends that Ashley opted to use Yulong's pattern in its furniture because SHDT6357 was cheaper and of comparable quality.[10]

For its part, Defendant Southern contends that Plaintiff's Union fabric design is derived from a copy of Yulong's fabric design during a trip Ward and Plaintiff's President Jason Jiang ("Jiang") made to China in late 2002 or early 2003.[11] Plaintiff denies that Ward and Jiang ever made such a trip.[12] In response, Ward admits that in his first affidavit, he may have been "mixing up" trips and may have overstated his responsibilities.[13] Nonetheless, Ward

ter *Jiang Decl.*], ¶ 2–3.

**2.** *Second Decl. of David N. Lappert, Sr. in Supp. of Pl.'s Mot. for Prelim. Inj.,* Paper # 44–1 [hereinafter *Lappert Decl.2d.*], ¶ 2, Ex. A.

**3.** *Jiang Decl.* ¶ 3–5.

**4.** *Decl. of David N. Lappert, Sr. in Supp. of Pl.'s Mot. for Prelim. Inj.,* Paper # 5–1 [hereinafter *Lappert Decl.*], ¶ 10–13.

**5.** *Id.* ¶ 22–26.

**6.** *Decl. of Zhejiang Yulong Indus. Co., Ltd. in Supp. of Def. Ashley Furniture Industries, Inc.'s Opp. to Pl.'s Prelim. Inj. Mot.,* Paper # 33–1, ¶ 5–7. Note that Plaintiff has challenged this affidavit as being improperly executed. The affiant, Mr. Gao Langgen, has executed a second affidavit in which he reaffirms the first affidavit. *Second Decl. of Zhejiang Yulong Indus. Co., Ltd. in Supp. of Def. Ashley Furniture Indus., Inc.'s Surreply in Opp. to Pl.'s Prelim. Inj. Mot.,* Paper # 77–1 [hereinafter *Yulong Decl.2d.*], ¶ 2. Plaintiff has not challenged the propriety of this affidavit, so the court will consider both Yulong affidavits in its opinion.

**7.** *Yulong Decl.* ¶ 4–7 and Ex. A–C.

**8.** *Decl. of Lisa Adair in Supp. of Def. Ashley Furniture, Inc.'s Opp. to Pl.'s Prelim. Inj. Mot.,* Paper # 32–1 [hereinafter *Adair Decl.*], ¶ 10.

**9.** *Second Decl. of Lisa Adair in Supp. of Def. Ashley Furniture, Inc.'s Opp. to Pl.'s Prelim. Inj. Mot.,* Paper # 80 [hereinafter *Adair Decl.2d.*], ¶ 6.

**10.** *Adair Decl.* ¶ 10.

**11.** *Decl. of Larry Ward in Supp. of Def. Southern Sales, Inc.'s Opp. to Prelim. Inj.,* Paper # 38 [hereinafter *Ward Decl.*], ¶ 5–6.

**12.** *Jiang Decl.* ¶ 10.

**13.** *Second Declaration of Larry Ward in Supp. of Def. Southern Sales, Inc.'s Opp. to Prelim. Inj.,* Paper # 50, ¶ 2–4.

re-avers that the substance of his earlier Declaration "is believed to be accurate."[14] In this way, Ward and Jiang's affidavits put forth contradictory statements; either Ward or Jiang is spinning a yarn.

In response to Ashley's allegations, Plaintiff argues that Yulong likely copied its Union pattern. Plaintiff asserts that it hired Yulong's sister company, Yulong Coating Industry Company, Ltd. ("Yulong Coating"), to provide backing for its Union fabric in March 2003, and that this arrangement allowed Yulong easy access to the design.[15] The General Manager of Yulong Coating confirms that Plaintiff sends its Union fabric to Yulong Coating for processing.[16] Mr. Jiang further affirms that Yulong is not known in the industry as a fabric design house, and that it is a mere manufacturer for American importers.[17] Plaintiff's President, Jiang, even swears that Gao, the President of Yulong, told Jiang that he signed Defendant Ashley's false affidavit just to avoid losing business.[18] Jiang says that Gao told him that he duplicated a sample fabric Ashley brought him.[19] Gao denies any such conversation or admission took place.[20] It is again clear that at least one of the affidavits is fabricated.

Jiang further asserts that he confronted Adair, a Vice President at Ashley, about the copying, that she admitted copying the pattern, and said that Ashley had made enough changes to differentiate Ashley's design from Union.[21] Adair denies ever making such an admission, and contends that her contact with Jiang was limited to a sales pitch.[22] Furthermore, she states that she never gave the Union fabric to Yulong, but rather obtained SHDT6357 independently from Yulong. Adair avers that she then compared the two fabrics and decided to use Yulong's less expensive fabric.[23] These competing affidavits illustrate yet another factual discrepancy.

## Discussion

### The Legal Standard

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) irreparable harm if an injunction does not issue; (3) that the threat of injury to the movant outweighs the harm the injunction may inflict on the nonmovant; and (4) that granting the preliminary injunction will not violate the public interest.[24] In a copyright action, if there is a likelihood of success on the merits, there is a presumption the other elements will be satisfied.[25] This rule makes sense. If the plaintiff is likely to show copyright infringement, there is a clear interest in enforcing the copyright law to prevent unfair copying.[26] Conversely, if the plaintiff is not likely to succeed, there would be a clear interest in not interfering with fair competition and

14. *Id.* ¶ 5.

15. *Id.* ¶ 6–7.

16. *Decl. of Zhang Weizhong in Supp. of Pl.'s Mot. for Prelim. Inj.,* Paper # 45–1, ¶ 4–5.

17. *Jiang Decl.* ¶ 8.

18. *Id.* ¶ 12–14.

19. *Id.*

20. *Yulong Decl.2d.* ¶ 3.

21. *Jiang Decl.* ¶ 9.

22. *Adair Decl.2d.* ¶ 4–5.

23. *Id.* ¶ 6.

24. *See I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 33 (1st Cir.1998); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 611 (1st Cir.1988).

25. *Concrete Mach.,* 843 F.2d at 611–12.

26. *See id.*

free speech by enjoining uses of unprotected works.

 To win a copyright case, the plaintiff must (1) show ownership of a valid copyrighted work and (2) copying of that work by the defendants.[27] To make a prima face case of ownership, plaintiff can rely on its copyright registration, thus shifting the burden to the defendant to show invalidity.[28] To show copying, a plaintiff can put forward either direct evidence, or evidence tending to show access and substantial similarity.[29]

### Analysis

The Plaintiff makes a showing likely to satisfy the second prong, copying, but not the first prong, ownership of a valid copyright. The court will address the second prong first.

### Copying: Access

Both Defendants had access to the Union design. Defendant Southern had access to the Union pattern when Ward worked for Plaintiff. As to Defendant Ashley, Adair ordered a sample from Plaintiff, and Yulong Coating had access to the work before the period of alleged infringement. This third party contact may be used to infer access.[30] Defendants argue that these instances cannot constitute access, as they occur after Yulong allegedly independently created SHDT6357. This argument is best handled under the question of ownership.[31] For the element of access, Plaintiff need only show that the Defendants had an opportunity to copy the work by virtue of their access to it. As both Defendants had access to the work, this element would likely be met. Furthermore, the design was prevalent in the relevant marketplace, so Plaintiff could also show access through widespread dissemination.[32]

### Copying: Substantial Similarity

The Plaintiff's and Defendants' works are substantially similar. While the substantial similarity test is not subject to precise definition, it is met "if a reasonable, ordinary observer, upon examination of the two works, would 'conclude that the defendant unlawfully appropriated the plaintiff's protectable expression.' "[33] " 'Slight or trivial variations between works will not preclude a finding of infringement under the ordinary observer test.' "[34] On the other hand, " '[i]f the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or quali-

27. *CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1513 (1st Cir.1996).

28. *Id.*

29. *Id.*

30. *T–Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 111 (1st Cir.2006) ("A trier of fact may impute access when there is 'evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work,' and the 'plaintiff's and defendant's dealings took place concurrently.' " (quoting 4 Nimmer & Nimmer, *Nimmer on Copyright* § 13.02[A] (2006))).

31. 4 Nimmer & Nimmer, *supra*, § 13.02[A] ("The trier of fact may conclude that the person who created defendant's work had, but did not avail himself of, the opportunity to view, but this conclusion properly goes to the ultimate issue of copying, and not to the subordinate issue of access.").

32. *Id.* ("[A]ccess may still be found, if plaintiff's work has been widely disseminated, as by extensive publication.")

33. *T–Peg, Inc.*, 459 F.3d at 112 (quoting *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir.2005)).

34. *Id.* (quoting *Concrete Mach.*, 843 F.2d at 608).

tatively, then no infringement results.' "[35] Color may be a factor in assessing similarity, but a slight or trivial variation in color will not preclude a finding of substantial similarity.[36]

This court concludes that a jury confronted with the disputed fabric patterns is likely to find them to be substantially similar.[37] All of the designs are paisley and are defined by a central ovular droplet-like shape with five leaf like protrusions. Inside the ovular shape is a leaf-like structure which always contains fifteen petals in each pattern. Each of the five leaves protruding from the ovular shape contains internal leaves with petals. Although varying levels of quality can make the number of individual petals hard to discern, there are approximately the same number of petals per leaf in Union and in each of the infringing works.[38] In every design, a similar urn shaped arrangement appears to the left of and below the leftmost petal protrusion. To the left and above the left-most petal protrusion, all of the designs feature another structure which contains four leaf-like ovals, each of which contains a plant. In each of the parties' designs, all of these plants has the exact same number of petals.[39] The identical nature of these details, combined with the very similar color and overall impression achieved when viewing the works, suggests that the ultimate finder of fact would likely find the designs to be strikingly and substantially similar.

Plaintiff argues that the similarities are so striking that the court should reject any evidence of independent creation. Plaintiff is likely correct that such a similarity exists that "no explanation other than copying is reasonably possible."[40] But this fact does not prove that Defendants copied from the Plaintiff. Considering the disputed facts, it is possible that they both copied the design from some third source. The court must, therefore, determine if Plaintiff has a likelihood of success on the first prong of the infringement test, ownership of a valid copyright.

*Ownership*

Plaintiff has a valid copyright registration for the Union fabric design.[41] This registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."[42] But unlike the presumption afforded to more carefully examined patent applications, a defendant need not produce clear and convincing evidence in order to overcome a copyright registration.[43] Rather, the registration simply constitutes prima

---

35. *Id.* (quoting 4 Nimmer & Nimmer, *supra*, § 13.03[B][1][a]).

36. *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 62 (1st Cir.2000) (finding two sweaters infringing even though the color was changed, but remanding a third one for jury trial).

37. *Compare Am. Compl.*, Paper # 59, Ex. A, p. 5 with *Lappert Decl.* Ex. F–G (Defendant Ashley) and Ex. N–O (Defendant Southern).

38. By the court's estimation, the leaf on the left has 10 petals in all of the Parties' works. The next leaf has 10, the next 13, the next 12, and the last only 5 as it is partially obscured behind an adjacent pattern. Even if the petal count weren't exactly identical, it certainly conveys a substantially similar appearance.

39. In each design, the number of the petals on the plants is five, five, six, and seven, reading from left to right.

40. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977).

41. *Am. Compl.*, Paper # 59, Ex. A.

42. 17 U.S.C. § 410(c) (2006).

43. Another district court has explained the strength of the presumption given a copyright registration:

Third, the presumption afforded by the certificate may be rebutted, inasmuch as the patent office does not fully examine a claim for a copyright, (as it does for patents), before a certificate is issued. *Midway*, 546

facie evidence which places the burden on the defendant to come forward with evidence showing that the plaintiff did not originate the work.[44] In essence then, the registration serves to force the defendant to produce evidence of the invalidity of the copyright.

■ In the present case, the Defendants respond to this challenge and provide evidence to rebut Plaintiff's copyright registration. The Defendants contend that Yulong developed the fabric design at issue and produce two sworn affidavits from Ward that accuse Jiang of stealing the Union design. This evidence of creation by a third party, combined with the striking similarity described above, creates a triable issue of fact as to whether Plaintiff owns the Union pattern. With the presumption afforded by the registration thus attacked, the court must instead look at the evidence to assess Plaintiff's likelihood of success. Considering all of the disputed facts and bald accusations flying between the parties, the court is unable to make any credibility determinations sufficient to conclude that the Plaintiff has a likelihood of success on the merits. With the record as is, in an exercise of its discretion, this court will not grant the weighty relief of a preliminary injunction.

The First Circuit Court of Appeals notes that it is inappropriate to proceed on affidavits in a preliminary injunction context

---

F.Supp. at 140, 143. *See also Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980), where the court held "a certificate of registration creates no irrebuttable presumption of validity. Where other evidence in the record casts doubt on the question, validity will not be assumed." *Id.* at 908. As I noted earlier, the statutory presumption merely shifts the burden of proof. *Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985). Ordinarily, the plaintiff would be required to come forward with independent evidence demonstrating that it is the owner of a valid copyright, but with the presumption, the defendant must come forward with evidence demonstrating that this is not the case. *Yamate USA Corp. v. Sugerman*, No. 89–763, 1991 WL 274854, **5–6, 1991 U.S. Dist. LEXIS 20701, at *15–16 (D.N.J. March 7, 1991) (reversing, on reconsideration, a decision not to issue a preliminary injunction). *See also Midway Mfg. Co. v. Bandai–America, Inc.*, 546 F.Supp. 125, 140 (D.N.J.1982) ("This prima facie presumption of validity and ownership is rebuttable; where evidence in the record casts doubt on the issue, there is no assumption of validity." (citations omitted)).

44. The test for rebutting a copyright registration has been described as follows:

Once the plaintiff produces a certificate of copyright, which constitutes prima facie evidence of copyrightability in judicial proceedings, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid. See 17 U.S.C. § 410(c); *Lotus*, 49 F.3d at 813; *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991). "At this juncture, it is incumbent upon a putative infringer to establish that the work in which copyright is claimed is unprotectable (for lack of originality) or, more specifically, to prove that the portion of the copyrighted work actually taken is unworthy of copyright protection." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir.1996). Upon defendant's proof of lack of originality by plaintiff through evidence that the plaintiff copied from prior works, the burden shifts back to the plaintiff to prove originality. *See, e.g., Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 667 (3d Cir.1990); *Midway Mfg. Co. v. Bandai–America, Inc.*, 546 F.Supp. 125, 140 (D.N.J.1982); Nimmer, § 12.11[B] at 165–67. "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright. Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality." *Masquerade Novelty*, 912 F.2d at 668–69; see Nimmer, § 12.11[B], at 165–67.

where the affidavits are sharply at odds.[45] In such cases, an evidentiary hearing may be useful to help resolve the issue.[46] As none of the parties to this case requested such a hearing, this court will rule on the preliminary injunction using only affidavits. When these kinds of credibility determinations must be made, courts generally do not issue a preliminary injunction, but rather leave the issue for a jury to resolve.[47] Without reliable evidence procured through discovery and cross examination, the court has no meaningful basis from which to conclude that Plaintiff is sufficiently likely to prevail that a preliminary injunction would be justified.

Plaintiff attempts to identify several inconsistencies in Defendants' affidavits and argues that the affidavits themselves reveal who is telling the truth. Plaintiff argues that if Yulong invented similar fabric designs in 2002, Yulong would have some record of marketing the fabrics prior to the period of alleged infringement.

While this point might be proven after discovery, at present the court cannot conclude that a lack of sales receipts shows Yulong is lying. First, Yulong swears that one of the related fabrics did have "great demand in the market."[48] Secondly, a lack of sales might not prove a lack of invention. Yulong could have invented the fabric, and not realized its profitability until after the Plaintiff (or even Art Cottage) stole it and successfully marketed it. The court does not mean to imply that it believes that this is what happened. Instead, this example simply shows that without more complete evidence, the current contradictory affidavits before the court support many possible explanations.

Plaintiff also argues that Ashley's order of fifty yards of Union fabric through express shipment in 2004 belies Ashley's argument that they were simply comparing fabrics. But, Adair swears that she simply followed standard practice.[49] The court is unwilling to find a likelihood of infringe-

---

*CMM Cable Rep.*, 97 F.3d at 1513.

**45.** *Campbell Soup Co. v. Giles*, 47 F.3d 467, 470 (1st Cir.1995).

**46.** *Id.*

**47.** *See e.g., Spencer Co. v. Armonk Indus., Inc.*, 489 F.2d 704, 707 (1st Cir.1973) (affirming the refusal to grant a preliminary injunction as an appropriate exercise of discretion considering a "major factual dispute"); *Lopez–Quinonez v. Puerto Rico Nat'l Guard*, 455 F.Supp.2d 60, 66 (D.P.R.2006) ("The motion as to preliminary injunction is DENIED as the Court considers that the preliminary injunctive relief in this case, being one to determine likelihood of success and there being no 'smoking gun' evidence, precludes the Court, at this stage, from deciding issues of credibility, weighing of evidence, and issues of motive and intent in order to determine the required injunctive criterion of 'likelihood of success.' The Court is of the opinion that the described issues are outcome determinative to be made by the jury."); *Franklin v. Ciroli*, 865 F.Supp. 940, 947 (D.Mass.1994) (Tauro, J.) (citing *Spencer Co.*, 489 F.2d at 707); *Data Gen.*

*Corp. v. Grumman Sys. Support Corp.*, 1988 WL 159936, *4, No. 88–0033–S, 1988 U.S. Dist. LEXIS 16427, at *11 (D.Mass. Dec. 29, 1988) (recognizing the inappropriateness of a preliminary injunction where credibility determinations must be made, but granting a preliminary injunction because the legal and factual issues "have been sufficiently illuminated"). *See also Waldmann Lighting Co. v. Halogen Lighting Sys.*, No. 91–C–3491, 1993 WL 243388, *4 (N.D.Ill. July 1, 1993) ("Moreover, the evidence of similar looking lamps being marketed as early as 1985 by companies other than the defendant subtracts from the plaintiff's likelihood of success by raising questions about the exclusivity of Waldmann's trade dress. The issues of who produced these lamps in what quantities and how, where and when they were marketed remains murky, but this lack of clarity supports a finding that the question be resolved after a full trial on the merits, not on a preliminary injunction motion.")

**48.** *Yulong Decl.* ¶ 7.

**49.** *Adair Decl.2d.* ¶ 6.

ment on the basis of one such rush order. While this fabric shipment shows Defendant Ashley's access to the Union product, it does not prove that Ashley copied Plaintiff's valid copyrighted work.

Plaintiff also points to Ward's inconsistent and uncertain assertions in his second affidavit regarding exactly what happened on any alleged trip Ward made to China with Jiang. Plaintiff argues that Ward would never have made such a trip and that he certainly didn't make one with Jiang. Ward's uncertainties regarding the China trip are not enough for this court to conclude he lied when he swore that "ACHF's Union fabric that is allegedly copyrighted is a copy or is derived from that fabric that Mr. Jiang brought back from China in 2002 or 2003."[50]

Plaintiff further argues that Ward's story cannot be credited because the alleged trip occurred after the date Plaintiff says it purchased the Union pattern from Art Cottage. This argument, however, actually demonstrates an important weakness in Plaintiff's own preliminary evidence; Plaintiff's purchase of the pattern is uncorroborated. Jiang avers that the Plaintiff bought the pattern at issue from Art Cottage,[51] but his only proof is an invoice bearing the name Louise 019C.[52] The invoice contains no picture or other proof that the pattern now known as Union is actually the pattern purchased. Plaintiff does not include any affidavit from Art Cottage or the actual creator of the work. This fact does not mean that Jiang is lying. It does mean that the court has no basis to credit Jiang's testimony over that of Ward and Gao. That the affidavits are contradictory does not prove that Plaintiff is right, but rather, once again illustrates the inap-

propriateness of preliminary injunctive relief.

Similarly, Plaintiff argues that Yulong's claim of invention is not credible because Yulong is not known as a fabric designer.[53] In response, Yulong says that it has developed a number of fabrics, and provides photos of fabric it purportedly designed.[54] With no real reason to believe one party over another, this court is not prepared to make any speculative conclusions about Yulong's reputation in the industry. Similarly, the alleged disputed admissions of liability are not evidence that bear probative weight sufficient to support a preliminary injunction.

The court is aware that Defendants will have the burden of rebutting the Plaintiff's copyright registration's presumption of ownership before any ultimate fact finder. Nonetheless, considering the highly disputed evidence, the difficulty of making credibility determinations on these grossly inconsistent affidavits, and the lack of corroboration of Plaintiff's own claim to authorship, this court concludes that the Plaintiff is unable to show a likelihood of success on the merits. With this crucial factor in the test for preliminary injunctions not met, the court need not consider the parties arguments regarding irreparable harm.

## Conclusion

The contradictory affidavits filed by the parties cry out for further development through discovery and cross examination. The Plaintiff's *Motion for Preliminary Injunction* is DENIED. An order will issue.

---

**50.** *Ward Decl.* ¶ 6.

**51.** *Jiang Decl.* ¶ 2–3.

**52.** *Id.* Ex. A.

**53.** *Id.* ¶ 4–5.

**54.** *Yulong Decl.* ¶ 5–7.