**Ralph S. WEAVER, etc., et al.,**
**Plaintiffs, Appellants,**

v.

**Charles HENDERSON, etc., et al., Defendants, Appellees.**

No. 92–1821.

United States Court of Appeals, First Circuit.

Heard Dec. 9, 1992.

Decided Jan. 21, 1993.

Kathleen M. McCarthy, Boston, MA, for plaintiffs, appellants.

James T. Masteralexis, Boston, MA, on brief for Intern. Broth. of Police Officers, amicus curiae.

Rosemary S. Gale, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., Boston, MA, was on brief, for appellees.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

In this case, the district court refused to issue a preliminary injunction suspending the Massachusetts State Police Department's "no mustache" policy. The plaintiffs, veteran police officers partial to their existing mustaches, prosecute this appeal. Finding no legal error or abuse of discretion, we affirm the denial of interim relief.

## I. BACKGROUND

In 1991, Massachusetts decided to merge four state police forces (the Division of State Police, the Metropolitan District Commission Police, the Capitol Police, and the Division of Law Enforcement of the Registry of Motor Vehicles) into a single entity (the Department of State Police). *See* An Act to Consolidate Certain Police Forces in the Commonwealth, 1991 Mass.Acts c. 412, at 985. When the enabling legislation was signed into law, defendant-appellee Charles Henderson was the ranking officer of the Division of State Police. Since the legislation stipulated that Colonel Henderson, by virtue of his rank, would serve as the "executive and administrative head" of the composite force, *id.* at 990, he possessed power to "make all necessary rules and regulations" for governance of, and discipline within, the new department. *Id.* at 991. In addition, the law directed him to establish a transition program to familiarize officers of the component units with the new department's rules and practices and to inculcate a unified mission. *See id.* at 1032.

Pursuant to his newly conferred statutory authority, Colonel Henderson promul-

gated General Order 01 (the Order).[1] The Order barred officers of the Department of State Police from wearing mustaches on and after July 1, 1992, except for undercover assignments or health reasons.[2] In this respect, the Order is substantially identical to a regulation that for seventy-one years dictated the appearance of members of the former Division of State Police, 1,213 strong as of 1991, who comprise more than half the total membership of the 2,093–officer consolidated force created by the 1991 legislation.

On May 21, 1992, six veteran officers of the former Metropolitan and Registry police who had worn mustaches throughout their law enforcement careers sued for declaratory and injunctive relief, naming Colonel Henderson, the Commonwealth of Massachusetts Department of Public Safety, and the Massachusetts State Police as respondents. The plaintiffs simultaneously sought a preliminary injunction to prevent the "no mustache" rule from taking effect as scheduled. They claimed, *inter alia*, that the Order, if implemented, would abridge their First and Fourteenth Amendment rights by forcing them to sacrifice an integral aspect of their personal identities.

Following the submission of affidavits, the district court held a hearing on the prayer for interim injunctive relief. At the conclusion of the hearing, the court allowed the parties to file supplemental affidavits. After considering the cumulative record, the court refused to meddle with implementation of the Order, finding that the plaintiffs were unlikely to succeed on the merits

of their constitutional challenge. This appeal ensued.

## II. ANALYSIS

We rehearse the criteria applicable to interim injunctive relief and then assess the supportability of the ruling below.

### A. *Legal Standards.*

Over time, we have developed a quadripartite test for determining whether litigants are entitled to preliminary injunctive redress. *See Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991). The *sine qua non* of that formulation is whether the plaintiffs are likely to succeed on the merits.[3] *See id.* at 6 (labeling this factor "critical"); *Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981) (stating that "the probability-of-success component has loomed large" in most cases), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). In the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief. *See, e.g., LeBeau v. Spirito,* 703 F.2d 639, 645 (1st Cir.1983) (affirming denial of preliminary injunction and ending inquiry after concluding that plaintiffs were unlikely to prevail on the merits).

When the district court applies the correct legal standard in evaluating a motion for a preliminary injunction, its decision to grant or deny relief is subject to abuse-of-

---

**1.** General Order 01 provides in pertinent part:
4.5.5 Hair may be tapered or blocked at the sides but will not touch the ears.
4.5.6 Wigs or hairpieces may be worn if they conform to standards for natural hair.
4.5.7 Faces will be clean shaven. NO mustaches, beards or goatees except:
● Undercover officers with approval of the Bureau Commander;
● Medical problems verified by a medical practitioner with documentation forwarded, through channels, to the State Surgeon for review and recommendations to the Office of the Colonel/Superintendent.
4.5.8 Sideburns will be neatly trimmed and rectangular in shape. They will not be longer than the midpoint of the tragus of the ear and will be:

● Trimmed horizontally, at a right angle;
● Of even width.

**2.** Notwithstanding the Order's effective date, Colonel Henderson provided that those who refused to put blade to face by July 1 would be sworn into the new department as special state police officers, enjoying "full police powers" until July 1, 1993.

**3.** The remaining aspects of the four-part test involve (1) the potential for irreparable injury, (2) the relevant balance of hardships if the restrainer does or does not issue, and (3) the effect on the public interest of granting or withholding temporary injunctive relief. *See Narragansett Indian Tribe,* 934 F.2d at 5.

discretion review and will, therefore, be afforded considerable respect. *See Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988) (collecting cases). The court of appeals will find an abuse of discretion in this wise only "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the [trial] court makes a serious mistake in weighing them." *Id.*

### B. *Discussion.*

In this case, the lower court apprehended the correct legal standard and rested its ruling explicitly on the absence of probable success. Thus, we are left to ponder a single question: did the court misuse its discretion in concluding that the plaintiffs would likely lose their case because of their inability to demonstrate that the ban on mustaches was arbitrary? The Supreme Court's opinion in *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), compels a negative answer to that inquiry.

In *Kelley*, plaintiffs brought a constitutional challenge to a grooming regulation that was part of a network of rules emphasizing "the overall need for discipline, esprit de corps, and uniformity" within a police department. *Id.* at 246, 96 S.Ct. at 1445. Acknowledging the deference due government agencies in implementing their chosen organizational modes, *see id.* at 247, 96 S.Ct. at 1445, the Court held that the plaintiffs could defeat the grooming regulation only by showing that it was so irrational as to verge on the arbitrary. *See id.* at 248, 96 S.Ct. at 1446. The regulation cleared this rather modest hurdle because maintaining "similarity in appearance," either to abet the public's easy recognition of police officers or to promote a sense of "esprit de corps" among the troopers themselves, was "a sufficiently rational justification" for requiring that gendarmes be clean shaven. *Id.*

*Kelley*'s grip on the instant case is unrelenting. The Order at issue here is roughly comparable to that endorsed by the *Kelley* Court. It is, therefore, presumptively valid. *See id.* at 247, 96 S.Ct. at 1445. The plaintiffs have not undermined this presumption in any significant respect. They presented no evidence which would compel a court to conclude that the Order is chimerical. To be sure, they have argued that the "no mustache" rule lacks a rational basis [4]—but merely making such a claim does not prove the point.

The sole factual support for plaintiffs' argument seems to be the happenstance that other organizations, including the United States Marine Corps and several state police forces, enjoy a strong sense of camaraderie while permitting officers to sport mustaches and other barbigerous adornments. Yet, rules are not irrational simply because they differ from the rules employed by other organizations with similar goals. *See id.* at 246, 96 S.Ct. at 1445 (holding that the constitutional validity of an organizational structure, with its implementing regulations, "does not depend ... on any doctrine of historical prescription").

The plaintiffs' failure to adduce meaningful proof of arbitrariness stands in stark contrast to the defendants' proffer. Colonel Henderson's affidavit makes pellucidly clear that the justification behind the "no mustache" rule is very much the same type of rationale accepted by the *Kelley* Court and consistently honored in later cases. *See, e.g., Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir.1992); *Egger v. Phillips*, 710 F.2d 292, 319 (7th Cir.) (collecting cases), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *Waters v. Chaffin*, 684 F.2d 833, 839 (11th Cir.1982). Colonel Henderson explained that, when confronted with the task of melding a cohesive unit instilled with a "common purpose"

---

**4.** Appellants also asseverate that the "no mustache" rule is arbitrary because it is the only grooming standard, of many promulgated, that has been specifically enforced. However, the record does not adequately support the asseveration. Even so, we fail to see why a constitutionally valid rule would be rendered invalid merely because other, similar rules are poorly enforced.

and a "shared mission" from disparate parts, he thought it highly desirable to begin from "a consistent starting point." To that end, he concluded that "consistency in appearance" would help to develop "shared pride" and "esprit de corps" among the more than 2,000 men and women of the fledgling department. And, inasmuch as the rule requiring officers to be clean shaven is the same rule that previously governed the "old" State Police, implementing a standard so closely identified with a majority of the members of the "new" State Police would enhance the chances of a successful consolidation.

Although the district court was not bound to accept the Henderson affidavit at face value, it was certainly entitled to credit the Colonel's assessment of the situation—particularly when, as in this instance, the Colonel's stated views were not inherently implausible, internally inconsistent, or contradicted by other credible evidence. At the preliminary injunction stage, it is, after all, "the district court's duty—and its prerogative—to assess the facts, draw whatever reasonable inferences it might favor, and decide the likely ramifications." *Independent Oil & Chem. Workers*, 864 F.2d at 933. The court below appears to have followed this protocol faithfully. No more was exigible.

## III. CONCLUSION

We need go no further.[5] "Likelihood of success cannot be woven from the gossamer threads of speculation and surmise." *Narragansett Indian Tribe*, 934 F.2d at 6. Here, *Kelley* cast a large shadow over plaintiffs' case. The district court, evaluating the dimensions of this shadow, denied preliminary injunctive relief. Because plaintiffs have not persuaded us that the lower court overlooked pertinent factors,

focused on inappropriate factors, or made a serious error in weighing and balancing the relevant concerns, we cannot intervene. On this jubate record, there is scant reason for suspending the "no mustache" regulation.

*The denial of the motion for preliminary injunction is affirmed. Costs to appellees.*

---

**5.** Given the weakness of plaintiffs' case on the merits, an analysis of the other factors bearing on preliminary injunctive relief would be supererogatory. *See, e.g., Coalition for Basic Human Needs v. King,* 654 F.2d 838, 841 (1st Cir. 1981) (holding that even "excruciatingly obvious" injury is irrelevant when a plaintiff has not demonstrated likely success on the merits). We pause, however, to note that, in their discussion of irreparable harm, appellants mistakenly focus on the psychological damage an altered facial appearance ostensibly creates. In light of Colonel Henderson's decision delaying implementation of the grooming rule, *see supra* note 2, the appropriate inquiry for purposes of irreparable harm is not psychic harm, but whether the mustachioed officers' temporary designations as special police officers will have lasting effects.