George Timothy MARSHALL

v.

R.S. MEANS COMPANY, INC.
and Southam, Inc.

Civil Action No. 96–11896–GAO.

United States District Court,
D. Massachusetts.

Sept. 27, 1996.

Bernard J. Bonn, III, Dechert, Price & Rhoads, Boston, MA, for George Timothy Marshall.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff George Timothy Marshall alleges that, under a letter agreement dated March 8, 1995, between him and the defendants R.S. Means Company, Inc. ("Means") and Southam, Inc. ("Southam"), he has the present right to buy Means from Southam, its parent company. He further alleges that Southam is about to consummate a sale of Means to another buyer, in breach of the agreement. He seeks a preliminary injunction against the consummation of that imminent sale.

The agreement Marshall relies on is attached to his complaint as Exhibit A. He argues that the agreement unambiguously grants him what amounts to a right of first refusal "[i]f Southam considers selling R.S. Means ... at any time this agreement is in effect." The proposed sale to another party has triggered his right, he says, and he must be given the opportunity to exercise it. He says that he is prepared to do so. If Means is sold to the other proposed buyer, he claims that he will have lost an unique opportunity and will have been, therefore, harmed irreparably.

"In the typical case, a party seeking preliminary injunctive relief must prove: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the public interest." *EEOC v. Astra USA, Inc.*, 94 F.3d 738, 742 (1st Cir. 1996). "The *sine qua non* of that formulation is whether the plaintiffs are likely to succeed on the merits." *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993). Establishing that proposition is "critical" to a successful application for preliminary injunctive relief. *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir.1991). Early in a case, as here, the judgment whether the plaintiff has demonstrated a substantial likelihood of success on the merits of his claim involves an assessment, in light of the available information, of the probable outcome of the claim. *Id.* "In the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief." *Weaver*, 984 F.2d at 12.

After review of the submissions of the parties, including especially the agreement itself, I conclude that Marshall has not demonstrated a substantial likelihood of prevail-

ing on the merits of his claim. He relies on the proposition that the agreement clearly and unambiguously grants him the right he seeks to enforce. That proposition has to be rejected. The document is *not* clear. If the words Marshall points to are isolated, they can, of course, be given a "plain meaning." But if they are considered in context, either narrowly in the context of the section of the agreement in which they appear or broadly in the context of the whole agreement, the meaning becomes far less "plain." The lack of clarity can be illustrated briefly.

The supposed right is set forth in section 3 of the agreement, which provides in part as follows:

> 3. During the first two years we can only part company as provided in Section 11. After that either party can trigger a buy/sell by offering to buy the entire interest of the other or to sell the offering party's entire interest in the joint venture in either case at the same price per percentage interest (a "Buy/Sell Offer"). If R.S. Means is sold at any time the joint venture is in effect, you [Marshall] have a one year commitment to remain with the entity.
>
> If Southam considers selling R.S. Means, either individually or collectively as part of the Southam Construction Information Group at any time this agreement is in effect, you will have an opportunity to buy it at the lesser of the price proposed by R.S. Means or fair market value.... If Southam proposes such a sale, you shall have the right to offer to purchase it at the lesser of the proposed sale price or fair market value....
>
> Compl., Ex. A., § 3.

The provision Marshall relies upon is found in the first sentence of the second paragraph just quoted. Reading that provision in context, several problems emerge with respect to Marshall's proposed interpretation. First, it is not clear that section 3 applies at all in the present circumstances. During the first two years, it says at the outset, the parties can "part company"[1] only in accordance with section 11, and the ensuing provisions in section 3 apply only "[a]fter that."

Second, the last sentence of the first paragraph of section 3 refers to the contingency of a sale of Means "at any time the joint venture is in effect." The very next sentence, the one relied on by Marshall, refers to a contemplated sale of Means "at any time this agreement is in effect." Marshall argues that in these two adjacent sentences the parties intended to distinguish between the joint venture, on the one hand, and the joint venture *agreement*, on the other, and thus to provide him with the right to buy Means even after the joint venture had been terminated so long as the "agreement" continued to govern the sorting out of the parties' respective post-termination rights and obligations. The construction does not seem a particularly likely one. It seems more likely that the parties were not choosing their words with such calculated precision but rather used both phrases to refer generally to the period of time during which their relationship under the agreement would exist.

Third, section 3 refers to section 11 for prescription of what happens if the parties "part company" within the first two years. Section 11 deals with various contingencies, including some "buy/sell" provisions. In particular, it provides that Southam will repurchase Marshall's equity if he should be terminated without cause, which is what happened. Section 11 does not provide him, in that contingency, any right to buy Means from Southam. It would seem somewhat inconsistent for the parties to have set out these specific provisions if they intended that they should each still have their respective "buy/sell" rights outlined in section 3.

█ It is hard to say exactly what the parties meant from textual analysis of the agreement alone. At minimum, Marshall's position that the agreement is unambiguous in his favor cannot be accepted. On the contrary, the agreement lacks clarity and does not articulate the parties' complex intentions without ambiguity. When language in a contract is ambiguous, it may be inter-

---

1. A buyout of one party by the other would seem to be one common way of "parting company."

preted with the help of extrinsic evidence about, among other things, the parties' negotiations. *See Den Norske Bank v. First Nat'l Bank of Boston,* 75 F.3d 49, 52 (1st Cir.1996). Marshall offers no extrinsic evidence that would tend to resolve the contract's ambiguity in his favor. In contrast, the defendants offer prior drafts of the agreement as evidence that the provision in question does not have the meaning Marshall attributes to it. *See* Defendants' Supplemental Memorandum, Exs. 1–5.

At this point, it cannot be said that the defendants are clearly correct, either. Marshall's position is not entirely implausible. But some degree of plausibility is not the appropriate test. He has not shown that he has a *substantial likelihood* of success on the merits of his legal claim, and he thus falls short of making the showing essential to obtaining preliminary injunctive relief.

■ He argues further, however, that the harm he will suffer if the proposed sale is not enjoined is so significant and irreparable that it should make up for any shortfall in satisfying the first aspect of the preliminary injunction test. It is true that in a case where the likelihood is very strong that the moving party will suffer great irreparable harm, some leniency may be applied to the assessment of the likelihood of success on the merits. *See Astra,* 94 F.3d at 743–44. But a strong likelihood of great irreparable harm has never been held in this Circuit to be a substitute for the necessary showing of probable success on the merits. The nature of relief to be granted is a question that must necessarily be preceded by demonstration of a right to relief.

Finally, I also conclude that the plaintiff has not shown that the balance of potential harms weighs clearly in his favor. In this case, the submissions indicate that an improvidently granted injunction would harm not only the defendants but the potential buyer as well. There is harm to be expected from either decision; the plaintiff's likely harm, while great, does not appear on the present record to be more grievous in kind or severity than the likely harm to the others involved.

For all the foregoing reasons, the application for the entry of a preliminary injunction is *DENIED.*