Lauriat, J.
Richard Rubino and Samuel Liang, individually and as agents for Rubino & Liang, LLC and R&L Insurance Agency, LLC, Stephen C. Olsson and Advisory Group Equity Services Ltd. (collectively “the plaintiffs”), brought this action against John and Nancy Duggan (“the Duggans”) for declaratory and injunctive relief.[1] For the reasons set forth below, the motion for a preliminary injunction is denied.
BACKGROUND
This action arises from the sale of four fixed annuities issued by American National Insurance Company (“ANIC”) to the Duggans through Richard L. Rubino on behalf of R&L Insurance Agency, LLC. The purchase of the ANIC annuities required the Duggans to transfer assets from fixed annuities they owned with Aviva Life Insurance Company and the Savings Bank Life Insurance Company of Massachusetts, and a variable annuity issued by Metlife. The Duggans allege that the plaintiffs convinced them to sell their fixed and variable rate annuities for the sole purpose of earning commissions between six and ten percent — a process called churning.[2] The Duggans assert that they had to pay excessive surrender charges for selling their fixed and variable annuities and that they received a lower rate of interest on their new ANIC annuities than they had on their previous annuities.
On or about June 8, 2004, the Duggans filed a Statement of Claim for Arbitration with the National Association of Securities Dealers (“NASD”), contending that they had lost $197,822 as a result of the plaintiffs’ annuity churning. On August 20, 2004, the plaintiffs filed their complaint in this case and requested that the court enter immediate injunctive relief staying the arbitration proceedings before the NASD, on the ground that they are not subject to the NASD’s jurisdiction.
DISCUSSION
In order for an injunction to issue, the plaintiffs must demonstrate a likelihood of success on the merits of their claims and a need for injunctive relief that rises to the level of a substantial risk of irreparable harm. The Court must then balance that risk, assuming it exists, against any similar risk of irreparable harm which granting the injunction would create for the opposing party. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
I. Substantial Risk of Irreparable Harm
The plaintiffs claim that they will suffer irreparable harm if injunctive relief is not granted because their state constitutional right to a civil jury trial will be abrogated. This assertion must be evaluated in light of: (1) the highly-regulated nature of the financial services industry; and (2) the willingness of this court to schedule an expedited hearing on the plaintiffs’ request for declaratory judgment.
A. The Highly-Regulated Nature of the Financial Services Industry
The financial services industry is a highly-regulated field at both the state and federal levels. The National Association of Securities Dealers, the Securities and Exchange Commission, and the Massachusetts Securities Division all require investment advisers to comply with their registration procedures. These procedures include completing registration forms (such as the Uniform Application for Securities Industry Registration or Transfer (“Form U-4’j), paying reg *415 istration fees, and receiving a passing score on licensing examinations. In exchange for the right to be an investment adviser, individuals waive certain rights— including, in some cases, the right to a jury trial — and agree to conform their conduct to certain ethical standards. See Form U-4; NASD Code of Conduct.
The plaintiffs, Richard Rubino, Samuel Liang and Stephen C. Olsson, are fully aware of these requirements. They are all registered members of the NASD who have signed Form U-4. By doing so, they have consented to paragraph five of Form U-4, which reads in relevant part,
I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs[3] indicated in Section 4.
Form U-4.
This language indicates that the plaintiffs have voluntarily waived their right to a civil jury when required under the rules, constitutions, or by-laws of the NASD. Given the plaintiffs’ voluntary waiver of this right, the harm the plaintiffs may suffer by the possible infringement of this right is lessened, and does not rise to the level of irreparabiliiy.
B. Expedited Hearing on the Plaintiffs’ Request for Declaratory Judgment
The second factor to consider when evaluating the risk of irreparable harm to the plaintiffs is this court’s willingness to hold an expedited trial on the merits of the plaintiffs’ request for declaratory judgment. This court is willing and able to set a trial date within the next four months. Setting this early trial date means that the plaintiffs will only be required to submit to the early stages of NASD arbitration before the issue of the underlying arbitrability of the claim is decided. No final determination will likely have entered in the arbitration, and the plaintiffs’ right to a civil jury trial will be preserved if the arbitration issue is ultimately decided in their favor.
In conclusion, because of this court’s willingness to hold an expedited trial, and the highly-regulated nature of the financial services industry, the plaintiffs have not met their burden of showing a substantial risk of irreparable harm if an injunction is not issued.
II. Likelihood of Success on the Merits
Even assuming arguendo that the plaintiffs have shown a risk of irreparable harm, they have not met their burden of showing a likelihood of success on the merits of their claims. “Plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief.” Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); Marshall v. R.S. Means Co., Inc., 940 F.Sup. 39, 39 (D.Mass. 1996). The plaintiffs have not shown a likelihood of success on the merits because of: (1) the rules governing NASD arbitration; and (2) strong state and federal public policies in favor of arbitration.
A. NASD Arbitration Rules
The plaintiffs assert that they are not subject to the NASD arbitration process because “none of the contracts, applications or documents regarding the sale by R&L Insurance, LLC to the Duggans of the ANIC fixed annuities contained an arbitration clause.” They rely on NASD Code of Arbitration Rule 10101[4] as the only rule that determines the NASD’s arbitration jurisdiction, and they interpret that rule narrowly. They state that the Duggans’ claims arise out of business done by R&L Insurance Agency, LLC, an entity that is not a member of the NASD. As a result, the plaintiffs argue, R&L Insurance Agency, LLC is not subject to NASD arbitration because under Rule 10101, the Duggans’ “claims do not arise out of the business of any member of the NASD.”
A dose examination of Rule 10101 reveals its ambiguity. It spedfically provides that the NASD has jurisdiction over “any dispute, claim, or controversy arising out of or in connection with, the business of any member of the Association.” NASD Code of Arbitration Rule 10101 (emphasis added). The plaintiffs may very well be subject to NASD jurisdiction under Rule 10101 because the Duggans’ claim is in connection with the business of a member of the Assodation. Id. Richard Rubino and Samuel Liang are both registered with the NASD and they buy and sell securities through Advisory Group Equity Services Ltd. — a NASD member firm. Therefore, the plaintiffs may be subject to NASD arbitration because the Duggans’ claim may be in connection with the business of Advisory Group Equity Services Ltd.
Furthermore, the plaintiffs may be subject to NASD arbitration under Rule 10301,[5] which provides for arbitration for claims eligible under the Rule 10100 series between a customer and a person associated with a member. The plaintiffs may be considered persons associated with a member, under Rule 10301, because of their ties to Advisory Group Equity Services Ltd. Thus, the plaintiffs have not met their burden of persuasion to show that they are not subject to arbitration under Rule 10301.
Lastly, the plaintiffs may be subject to arbitration under the terms and conditions of the U-4 form. Richard Rubino, Samuel Liang, and Stephen C. Olsson all signed the U-4 form when they registered with the NASD. A signatory of a U-4 form “agree(s) to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 . . .” (emphasis added). Thus, the plaintiffs may be required to arbitrate by virtue of having signed the U-4 form because of the dispute between them and their customers the Duggans.
B. Public Policy Favors Arbitration
The Massachusetts Supreme Judicial Court has stated on a number of occasions the strong public policy in favor of arbitration. Drywall Sys., Inc. v. ZVI Constr. *416 Co., Inc., 435 Mass. 664, 669 (2002) (“absent contrary statutory direction, the strong public policy in favor of arbitration of commercial disputes should be given effect”); Ladd v. Scudder Kemper Invs., Inc., 433 Mass. 240, 246 (2001); Bureau of Special Investigations v. Coalition of Pub. Safety, 430 Mass. 601, 604 (2000); Minton Constr. Corp. v. Commonwealth, 397 Mass. 879, 880 (1986). In addition, the SJC has ruled in favor' of encouraging “arbitration as an alternative means of efficient commercial dispute resolution without the ‘delay and obstruction in the courts.’ ” Drywall, 435 Mass. at 671 (quoting Lawrence v. Falzarano, 380 Mass. 18, 28 (1980)). Moreover, the United States Supreme Court has evidenced its support for arbitration as a trial alternative. In Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987), a case involving the arbitrability of a claim against a brokerage firm registered with the Securities and Exchange Commission, the Supreme Court affirmed the “federal policy favoring arbitration.” The Court stated that “we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the [Arbitration] Act.” Id. (internal quotations omitted).
The strong federal and state policies in favor of arbitration greatly lessens the plaintiffs’ likelihood of success in proving a constitutional violation. Arbitration is an alternative that is encouraged by the state and federal courts because of its efficient and economical disposition of cases. Furthermore, this case involves a very specialized area of law. A NASD arbitrator may well be better equipped to decipher the complexity of the alleged churning practices in this case than a civil jury. Given the limited record presently before the court, the state and federal policy favoring arbitration, and the substantial questions that still remain as to what rules govern whether a party is subject to arbitration by the NASD, the plaintiffs have not shown a likelihood of success on the merits.
III. Balancing the Risk of Irreparable Harm to Both Parties
As a result of this court’s conclusions that the plaintiffs have failed to meet their burden of showing a substantial risk of irreparable harm or a likelihood of success on the merits, it is not necessary to balance the risk of irreparable harm to both parties.
ORDER
For the foregoing reasons, the Motion for Preliminary Injunction is DENIED. The parties are directed to appear for a status conference at 2:00 p.m. on October 5, 2004 and a trial at 9:00 a.m. on December 6, 2004, on the plaintiffs’ complaint for declaratory judgment.

The plaintiffs have also brought two virtually identical actions against different defendants in Middlesex Superior Court that the court and the parties may seek to consolidate. Those cases are: Richard Rubino and Samuel Liang, individually and as agents of Rubino & Liang, LLC, and R&L Insurance Agency, LLC, Stephen C. Olsson, and Advisory Group Equity Services Ltd. v. Alan P. and Beverly J. Van Buskirk, Civil Action No. 2004-3303; and Richard Rubino and Samuel Liang, individually and as agents of Rubino & Liang, LLC, and R&L Insurance Agency, LLC, Stephen. C. Olsson, and Advisory Group Equity Services Ltd. v. Annie Chin Bombard, Civil Action No. 2004-3305.

“Churning occurs when a broker, exercising control over the volume and frequency of trades, abuses his customer’s confidence for personal gain by initiating transactions that are excessive in view of the character of the account and the customer’s objectives as expressed to the broker.” Black’s Law Dictionary 242 (6th ed. 1990).

“SRO” stands for self-regulatory organization and refers to the NASD.

Rule 10101 reads in relevant part: “This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section l(a)(iv) of the By-Laws of the Association for the arbitration of any dispute, claim, or controversy arising put of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated persons(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company:
(a) between or among members;
(b) between or among members and associated persons;
(c) between or among members or associated persons and public customers, or others; and
(d) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association’s arbitration facilities and procedures, and participants, pledgees, or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency."

Rule 10301 reads in relevant part: “(a) Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.”