**BEAR, STEARNS & CO., INC., Plaintiff,**

v.

**Douglas A. SHARON, Defendant.**

**Civil Action No. 08–10505–NMG.**

United States District Court, D. Massachusetts.

April 4, 2008.

Jordan D. Becker, Joseph E. Gasperetti, Leonard Weintraub, Paduano & Weintraub LLP, New York, NY, Michael B. Cosentino, Sara E. Hirshon, Seegel, Lipshutz & Wilchins, P.C., Wellesley, MA, for Plaintiff Bear, Stearns & Company, Inc.

Michael P. Boudett, Joshua S. Pemstein, Foley Hoag LLP, Boston, MA, for Defendant Douglas A. Sharon.

Michael L. Chinitz, Rose, Chinitz & Rose, Boston, MA, for Deponent Morgan Stanley & Co. Inc.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The defendant, Douglas A. Sharon ("Sharon") was employed by the plaintiff, Bear, Stearns & Co., Inc. ("Bear Stearns") as a broker and managing director of its Boston office. On March 26, 2008, following Sharon's abrupt resignation, Bear Stearns filed this Complaint and a Motion for a Temporary Restraining Order ("TRO") and a Preliminary Injunction to enjoin Sharon's continued employment at a competing firm as well as other alleged wrongful conduct.

This Court convened a hearing on that motion and entered the requested TRO on March 27, 2008. Now before the Court is Bear Stearns's motion to convert the TRO into a Preliminary Injunction which would remain in effect until the arbitration panel of the Financial Industry Regulatory Asso-

ciation ("FINRA") renders its decision on the merits of this dispute.

### I. *Background*

In the midst of the well-publicized turmoil surrounding Bear Stearns, Sharon resigned from the firm on March 17, 2008, and immediately accepted a position with its competitor, Morgan Stanley & Co., Inc. ("Morgan Stanley"). Bear Stearns alleges that 1) the terms of Sharon's employment required that he give at least 90 days' prior written notice before resigning, 2) Sharon has misappropriated Bear Stearns's confidential information and 3) he has wrongfully induced employees (and clients) of Bear Stearns leave that firm and become employed by (or customers of) Morgan Stanley.

### A. The Breach of Contract Claim

Bear Stearns alleges that in December, 2005, it distributed a memorandum to all of its Senior Managing Directors, including Sharon, under the subject line "Terms of Employment at Bear Stearns—United States". That memorandum provides, in relevant part, that the recipients could accept a raise in their base salaries, among other benefits, subject to

A notice provision of not less than 90 days—which means that although you remain an employee at will, if you decide to leave Bear Stearns you must give prior written notice of your intention to leave. Once notice is given, for the ensuing 90 days ... Bear Stearns will pay your base salary, during which time you may be asked to perform all, some or none of your work duties in Bear Stearns's sole discretion. The notice period is enforceable by a temporary restraining order which Bear Stearns can enforce in court.

Although there is some confusion regarding the dates on which the memorandum was distributed and executed, the record indicates that Sharon received it and executed it, indicating his acceptance of its terms, on December 12, 2005.

On March 17, 2008, Sharon submitted notice of his resignation from Bear Stearns, effective immediately. He began work for his new employer, Morgan Stanley, the next morning. Bear Stearns seeks, in this action, to enforce specifically the provision of the "Terms of Employment" agreement cited above.

### B. The Claim of Other Wrongful Conduct

Bear Stearns alleges that, in addition to breaching his employment contract, Sharon also misappropriated Bear Stearns's confidential information and solicited his colleagues and clients to follow him to Morgan Stanley. The evidence in support of those allegations is sparse to negligible and will be discussed only briefly.

With respect to misappropriation of confidential information, Bear Stearns describes electronic records of what was printed by specific users (in this case, Sharon and his assistant, Frederic Debaets ("Debaets")) during the days leading up to Sharon's resignation. It asserts that during the weekend of March 15, 2008, Sharon printed 65 documents containing client information and that Debaets printed a great deal more.

Sharon responds in his sworn affidavit that he was working over the weekend to reassure his clients that their savings were safe and that he took no documents with him when he left. Debaets admits to printing information pertaining to prospective clients whom he had been pursuing but states that he took those documents home only for protection in case Bear Stearns did not open for business the following Monday. He denies that he printed anything that weekend at Sharon's behest. Neither affidavit is contradicted on the record and there is no evidence that

Sharon misappropriated Bear Stearns's confidential information in any way.

The wrongful recruitment of colleagues is alleged to have occurred during informal conversations between Sharon and his colleagues. Bear Stearns reports, second-hand (and third-hand), conversations in which Sharon expressed concern over the stability of Bear Stearns and satisfaction with his new situation at Morgan Stanley. He is also alleged to have provided contact information for Morgan Stanley's regional recruiting director and to have offered unspecified "help" for his Bear Stearns colleagues.

It is undisputed that most, if not all, of Sharon's clients have transferred their accounts at Bear Stearns to Morgan Stanley. There is also no dispute that Sharon was in telephone contact with many of his clients in the days leading up to his resignation and that he informed them of the fact that he was leaving Bear Stearns and would be working at Morgan Stanley. There is no evidence of any effort on Sharon's part to persuade his clients to take any action other than to protect the security of their assets.

## II. *Analysis*

### A. Legal Standard

■ To obtain preliminary injunctive relief under Fed.R.Civ.P. 65, a movant must demonstrate

(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.

*Nieves–Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir.2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis. *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993) (citations omitted).

### B. Application

#### 1. Likelihood of Success on the Merits

##### a. The Solicitation and Misappropriation

■ As noted above, Bear Stearns's allegations of misappropriation of confidential information and tortious interference with contractual and business relationships simply have not been substantiated on the record. The plaintiff was suspicious of the circumstances under which Sharon left its employment and it drew not unreasonable inferences about his contact with colleagues and clients but it can point to no direct evidence of wrongdoing. Because there is no demonstrable likelihood that it will succeed on the merits of these claims, this Court need go no further in its analysis of this aspect of the motion for a Preliminary Injunction. The motion will, with respect to these claims, be denied.

##### b. The Contract Claim

■ The defendant's first defense against the claim of breach of contract is that he does not recall ever seeing the two-page Memorandum re: Terms of Employment and that if he had understood the memorandum to limit his professional freedom, he never would have signed it. Sharon does not dispute that the signature on the document is his, however, and notwithstanding the confusion surrounding the date of signing, this Court is satisfied that he did sign it and has, therefore, accepted its terms.

Sharon contends next that the contract fails for lack of consideration although it purports to increase his annual base salary from $200,000 to $250,000. He states that his annual compensation comes in three parts: base salary, annual bonus and commissions and has recently amounted to about ten times his "base salary" in the

aggregate. He asserts, moreover, that the determination of his bonus takes into account the amount he was paid in base salary and, therefore, the subject "increase" in his base salary had no effect on his overall compensation. He concludes that his "salary" was nothing more than an advance on (and a very small percentage of) his annual compensation.

A contract is not void for inadequacy of consideration. *See* 7 WILLISTON ON CONTRACTS § 21. Even if a $50,000 increase in base salary is deemed insignificant by Sharon, it is a guaranteed increase and is more than sufficient consideration to support a binding contract.

The Court is satisfied that there is a reasonable likelihood that Bear Stearns will prevail on its breach of contract action at law because there was a binding contract between the parties and Sharon's resignation without 90 days' prior written notice constitutes a breach of that contract. Bear Stearns has, therefore, met the first element of the test for entry of a preliminary injunction.

### 2. Irreparable Harm

In order to be entitled to injunctive relief, however, Bear Stearns must also demonstrate that it will, absent such relief, suffer "irreparable harm", i.e. harm that cannot be recompensed by money damages. Although damage to client relationships and customer goodwill has been held to be "irreparable harm" under Massachusetts law, *e.g. All Stainless, Inc. v. Colby*, 364 Mass. 773, 308 N.E.2d 481 (1974), the financial services industry is uniquely skilled at computing the economic value of a given client. It is uncertain how many of Sharon's clients, if any, would have remained at Bear Stearns had he not resigned but that issue will be resolved by the FINRA arbitration board and, in any event, difficulty in calculating damages does not render them irreparable. Bear Stearns has failed to demonstrate that it

will suffer irreparable harm due to Sharon's employment at Morgan Stanley and an injunction against such employment would, therefore, be inappropriate.

### 3. Balance of the Hardships

In light of the pending FINRA arbitration, the hardship to Bear Stearns of permitting Sharon to resume his employment at Morgan Stanley is minimal. Bear Stearns's counsel suggested at the most recent hearing that dissolution of the restraining order would somehow undermine the ability of the arbitration panel to grant permanent injunctive relief. This Court was not inhibited from entering the TRO after Sharon began to work at Morgan Stanley the first time and it is unapparent why the arbitrator should be so inhibited in the future if good cause is shown. Furthermore, Bear Stearns's ability to retain (or regain) the business of its clients will not be unduly impaired if Sharon is permitted to provide advice to them from another location.

Sharon's financial wherewithal and ability to earn a living are not in jeopardy but an injunction will likely result in a loss of professional standing and the inability to advise his clients in times of economic turmoil. The loss from such a prohibition may not ever be fully restored. The balance of the hardships, therefore, favors Sharon and further weighs against the entry of a preliminary injunction.

### 4. Public Policy

Finally, Sharon contends and the Court agrees that the 90-day notice provision cannot be enforced at equity. Because the effect of specific performance in this case would be to require the defendant to continue an at-will employment relationship against his will, it is unenforceable in that manner. *Restatement (Second) of Contracts,* § 367. The so-called "garden leave" provision is not a simple restrictive covenant against competition or the solici-

tation of clients. If it were, a different result might be warranted but to give it full effect would be to force Sharon to submit to Bear Stearns's whim regarding his employment activity in the near future.

In addition to the general prohibition against specific performance of employment contracts, Sharon expresses concern over the well-being of his clients who face the prospect of being cut off from their trusted financial adviser. Although the Court is properly concerned foremost with the litigants before it, it agrees that the investors deserve some consideration. If the Arbitration Board, in its evaluation of the merits of this dispute, determines that Sharon has acted wrongfully, he will face the consequences of that determination in the form of monetary damages but his clients will not be disadvantaged.

## ORDER

Notwithstanding this Court's finding that Bear Stearns is likely to prevail on the merits of its contract action against Sharon, i.e., that the parties entered into an enforceable contract that Sharon breached, a preliminary injunction does not lie. Because 1) a legal remedy is available and no irreparable harm is likely to befall the plaintiff, 2) the balance of the hardships is not in its favor and 3) public policy militates against this injunction, Bear Stearns's Motion for a Preliminary Injunction (Docket No. 3) is **DENIED.**

**So ordered.**