### BARLETTA HEAVY DIVISION, INC., Plaintiff,

v.

### ERIE INTERSTATE CONTRACTORS, INC., Phoenix Development & Construction, Inc., Gregory Zafirakis, Steven Moutsastos, Steven Zafirakis and Erie Painting & Maintenance, Inc., Defendants.

#### Civil Action No. 09–10143–NMG.

United States District Court, D. Massachusetts.

May 15, 2009.

Katherine M. Flaws Wilson, Elser LLP David P. Russman, Pepe & Hazard, Boston, MA, for Counter Claimant.

Nora L. Marantz, Richmonds & Co., LLC, Wellesley Hills, MA, for Plaintiff.

Laurence K. Richmond, Laurence K. Richmond & Associates, PC, Quincy, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

This is a breach of contract action arising out of two related contracts. A preliminary injunction barring some of the defendants from disposing of or transferring assets was entered by this Court on March 11, 2009, and has been extended through the duration of the litigation. Certain defendants have now moved for an affirmative injunction against the plaintiff to require the return to them of equipment. They have also moved for a trustee process attachment of certain funds in the possession of the Massachusetts Port Authority ("Massport").

### I. *Factual Background*

The plaintiff, Barletta Heavy Division, Inc. ("Barletta") was the general contractor on a project for Massport known as the "Pier Rehabilitation Project" in South Boston, Massachusetts ("the Project"). Barletta hired the defendant Erie Interstate Contractors, Inc. ("Erie") as a subcontractor for the Project to provide labor, material and equipment to clean, prepare and paint a new and existing "under deck structural steel support system." Barletta and Erie entered into a subcontract agreement ("the Subcontract") on July 21, 2006, by which Erie agreed to perform specified work and Barletta eventually agreed to pay $2,211,515.

Erie began work on the Project in August, 2006, but soon experienced financial difficulty. Because of that difficulty and because Erie was behind schedule on its work, Barletta paid a number of Erie's Project-related costs and taxes between January and September, 2007. Barletta maintains that it did so in an effort to keep the Project on track and to avoid a liquidated damages claim by Massport but that it never told Erie that it would not back charge for those payments. Erie responds that Barletta never indicated that it would so back charge.

In September, 2007, Erie's Chairman, defendant Gregory Zafirakis ("Gregory"), asked Barletta to purchase one of Erie's "vac trucks" to provide Erie with an infusion of cash that would allow it to continue work on the Project. Barletta eventually agreed to purchase two such trucks.

In December, 2007, Gregory again went to Barletta seeking financial assistance. On that occasion, he sought a loan for a related company, defendant Phoenix Development and Construction, Inc. ("Phoenix"). Barletta agreed to lend Phoenix $150,000 pursuant to a Revolving Credit Promissory Note ("the Note") and a Security Agreement ("the Security Agreement"). The Security Agreement was entered into by Erie, Phoenix, and, in their individual capacities, Gregory, defendant Steven Zafirakis ("Steven"), defendant Steven Moutsastos ("Moutsastos"), and defendant Markos Bahas ("Bahas") (collectively "the Debtors").[1] The Security Agreement provided Barletta with a blanket security interest in *all* of the Debtors' assets to secure the Debtors' liabilities to Barletta of every kind and description, direct or indirect, absolute or contingent, due or to become due, pursuant to the Security Agreement or any *other* indebtedness. Thus, by operation of the Security Agreement, Barletta's Subcontract with Erie became secured by all of the Debtors' assets.

---

1. Bahas has since been voluntarily dismissed as a defendant. Defendant Erie Painting and Maintenance ("EPM") signed a separate Security Agreement in which it attempted to insulate itself from any liability to the plaintiff beyond its guarantee of the $150,000 loan.

Because the Security Agreement is ambiguous with respect to its application to EPM, this Court did not enjoin EPM and all further references to "the Debtors" or "the defendants" in this memorandum are exclusive of EPM.

The $150,000 loan to Phoenix was apparently repaid in January, 2008, but Barletta did not release the Debtors from their obligations under the Security Agreement at that time. A few months later, Erie again informed Barletta that it was having financial difficulties. According to Barletta, Erie's Chairman, Gregory, threatened to walk off the job and abandon the Project if Barletta did not pay Erie's taxes in accordance with an alleged promise by Barletta to pay Erie's Project-related costs. Barletta denies that it ever made such a promise.

Barletta asserts that on March 20, 2008, Erie suspended all work on the Project allegedly because Barletta had reneged on its promise to pay Project-related costs incurred by Erie. Erie responds that it suspended work on the project on March 22, 2008, because of extreme high tides and the impending Easter Holiday. It also maintains that 1) it informed Barletta it would return to the project on March 25, 2008, but 2) on March 24, 2008, Barletta notified Erie by letter that it was terminating the Subcontract for non-performance.

## II. *Procedural History*

Barletta filed its complaint on January 30, 2009, along with a motion for a preliminary injunction. The complaint seeks a declaratory judgment that Barletta is entitled to repossess defendants' equipment pursuant to the Security Agreement (Count I) and that the defendants are liable to it for breach of the Subcontract (Count II), unjust enrichment (Count III), violation of M.G.L.c. 93A (Count IV) and breach of the Security Agreement (Count V).

A hearing on the motion for a preliminary injunction was held on March 6, 2009, at which time Gregory appeared *pro se* and indicated that he was in the process of trying to retain counsel. The Court post-poned the hearing for two weeks and, in the interim, entered a preliminary injunction prohibiting the defendants from transferring or disposing of any assets covered by the Security Agreement.

Just before the second hearing on March 20, 2009, the defendants filed their own motion for a preliminary injunction, seeking the return of unspecified equipment allegedly in the custody of Barletta. Defendants also moved for an attachment by trustee process and opposed the continuation or expansion of the preliminary injunction then in effect. The Court heard oral argument at that hearing but declined to make a ruling before a more comprehensive review of the recently filed pleadings. A third hearing on the matter was, therefore, scheduled for Friday, April 10, 2009.

At the most recent hearing, counsel for the defendants stated that his clients no longer opposed the continuation of the preliminary injunction then in force and that they were also withdrawing their motion for an attachment by trustee process. With respect to the defendants' motion for a preliminary injunction, counsel for the plaintiff indicated that his client was not opposed to returning equipment to the defendants in consideration for a satisfactory security interest in that equipment. At the request of both parties, the Court held in abeyance defendants' motion for a preliminary injunction but instructed the parties promptly to file a status report informing the Court of their effort to resolve the matter.

On April 27, 2009, the parties reported that they have been unable to settle their differences concerning Barletta's return of defendants' equipment and thus request the Court to decide the defendants' motion for a preliminary injunction.

### III. *Defendants' Motion for a Preliminary Injunction*

#### A. Legal Standard

■ To obtain preliminary injunctive relief under Fed.R.Civ.P. 65, a movant must demonstrate

(1) a substantial likelihood of success on the merits,

(2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest.

*Nieves–Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir.2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis. *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993) (citations omitted).

#### B. Application

#### 1. Likelihood of Success on the Merits

The defendants assert that they have a likelihood of success on their counterclaims that Barletta (and not the defendants) breached the Subcontract by excluding them from the job site and, furthermore, that Barletta breached a side agreement by refusing to pay all of Erie's Project-related costs and taxes.

■ The evidence currently before this Court does not support the conclusion that Barletta breached any contract with the defendants. In particular, the letters attached to the plaintiff's complaint indicate that Erie stopped performing the Subcontract on March 20, 2008, primarily because of a dispute over Barletta's non-payment of its Project-related costs and taxes. Such conduct on the part of Erie would constitute breach of the Subcontract which specifies that time is of the essence. Barletta was therefore justified in terminating the Subcontract and excluding Erie from the job site.

■ To the extent that Erie asserts that Barletta breached an oral agreement to assume all Project-related costs, there is little evidence of such an agreement and Barletta denies ever making such a promise. Moreover, if such an agreement existed, it would have contradicted the express terms of the Subcontract, which states:

This Agreement shall constitute the entire contract between the parties and may not be altered or amended in any respect except by *writing* duly executed by the parties hereto.

(emphasis added).

In light of those considerations, this Court concludes that the defendants have not shown a likelihood of success on the merits of their counterclaims.

#### 2. Irreparable Harm

■ The requirement of irreparable harm also poses an obstacle to defendants' request for injunctive relief. As Barletta points out, the defendants' motion does not specify the equipment it seeks to have returned (and, according to the recent status report, the parties dispute what equipment is in Barletta's possession). Nevertheless, there is no dispute that any equipment seized by Barletta has been in its possession since March, 2008. That the defendants did not seek the return of that equipment for nearly one year (and then only in response to Barletta's lawsuit) belies the assertion that they are irreparably harmed by the deprivation.

Because the defendants have not shown irreparable harm or a likelihood of success on the merits, their motion for a preliminary injunction will be denied.

### ORDER

In accordance with the foregoing, the defendants' motion for a preliminary injunction (Docket No. 21) is **DENIED.**

The defendants' motion for a trustee process attachment (Docket No. 22) is, in light of counsel's representation that it is withdrawn, **DENIED** as **MOOT.**

**So ordered.**